# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
### ALBANY DIVISION

| | | |
|---|---|---|
| **PETER DUDLEY,**<br>**individually and on behalf of all others similarly**<br>**situated,** | §<br>§<br>§<br>§ | **Civil Action No. 1:23-CV-00592-FJS-TWD** |
| *Plaintiff,* | §<br>§ | **JURY TRIAL DEMANDED** |
| **v.** | §<br>§<br>§ | **COLLECTIVE ACTION PURSUANT**<br>**TO 29 U.S.C. § 216(b)** |
| **CONSOLIDATED WASTE SERVICES, LLC**<br>**d/b/a TWIN BRIDGES WASTE AND**<br>**RECYCLING, and SCOTT EARL,** | §<br>§<br>§ | **CLASS ACTION PURSUANT TO FED.**<br>**CIV. P. 23** |
| *Defendants.* | §<br>§<br>§ | |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Peter Dudley, individually and on behalf of all others similarly situated ("Representative Plaintiff" or "Plaintiff"), respectfully moves this Court to preliminarily certify the proposed Rule 23 Class identified herein for the purpose of settlement, preliminarily approve the Collective and Class Action Settlement Agreement ("Agreement") between the Parties, and set a fairness hearing to address the same. A copy of the Agreement is attached as Exhibit A to this Motion. Defendants Consolidated Waste Services, LLC[1]("Consolidated Waste") and Scott Earl (collectively "Defendants") do not oppose this Motion.

## I. INTRODUCTION

This is a proposed collective and class action lawsuit for unpaid overtime wages brought by Representative Plaintiff on behalf of himself and all other similarly situated current and former

---

[1] Incorrectly plead as Consolidated Waste Services, LLC d/b/a Twin Bridges Waste and Recycling.

Drivers[2] of Consolidated Waste and/or Twin Bridges Waste and Recycling, LLC (collectively the "Parties"), who claim they were not properly compensated for all of the hours they worked. Representative Plaintiff has alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties. In addition to their claims under the FLSA, Plaintiff further alleged claims under New York state law.

As explained more fully below, the Parties have negotiated an Agreement that will resolve the claims of the Representative Plaintiff, the Opt-In Plaintiffs, and the Collective/Class Members. By this Unopposed Motion, Representative Plaintiff is seeking certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23 and a settlement collective pursuant to 29 U.S.C. § 216(b). Specifically, Plaintiff seeks preliminary approval of a settlement class resolving their state law claims as a class action, and the approval of a settlement collective resolving their federal claims as a collective action.[3] Because the Class and the Collective encompass the same individuals, each individual who is a member of both the Class and Collective will have the opportunity to participate in both, or one or the other, if they so choose.

The total amount that Defendants will pay pursuant to the Agreement is $50,000.00, inclusive of attorneys' fees, costs, expenses, court-approved enhancement awards for the Representative Plaintiff, and settlement administration fees and expenses. Defendants will tender this Maximum Settlement Amount to the Claims Administrator and will have no rights to reversion of any of the money pursuant to the terms of the Agreement.

The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval under binding Second Circuit precedent.

---

[2] Capitalized terms not specifically defined in this Motion are defined in the Agreement, and their definitions are incorporated herein.

[3] The Final Approval Motion will seek Court approval for both the class action pursuant to Rule 23 and the collective action pursuant to 29 U.S.C. § 216(b).

## II.   ISSUES PRESENTED

By this Unopposed Motion, the Representative Plaintiff asks the Court to: (1) preliminarily and conditionally certify (for settlement purposes only) a proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure related to state law wage and hour claims; (2) conditionally (for settlement purposes only) certify a settlement collective under 29 U.S.C. § 216(b); (3) appoint Austin Anderson and Clif Alexander of Anderson Alexander, PLLC as Collective/Class Counsel for the Collective/Class Members for settlement purposes only; (4) appoint Peter Dudley as Representative Plaintiff for the Proposed Settlement Class and Collective; (5) approve the proposed Notice of Class and Collective Action Settlement and Consent Form, ("Notice") attached to the Agreement as Exhibits 1 and 2 and the notice plan as set forth in the Agreement; (6) set a date by which Plaintiff must file a motion for final settlement approval and award of attorneys' fees, expenses, and/or costs; and (7) schedule the Fairness Hearing.

## III.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

Peter Dudley filed this civil action on May 17, 2023, individually and on behalf of all other allegedly similarly situated persons, against Defendants alleging the miscalculation and subsequent underpayment of overtime wages (the "Lawsuit"). On August 8, 2023, Defendants filed the Answer denying liability and asserting numerous defenses to liability. Counsel for the Parties conferred regarding the claims and defenses at issue and, on September 22, 2023, filed a joint motion seeking to stay the proceedings to allow them to engage in an informal exchange of data in an effort to seek to resolve the Lawsuit. The Parties reached a resolution regarding the disputed claims and notified the Court of their pending settlement on January 2, 2024. See ECF No. 36.  The Parties then worked collaboratively to draft the Agreement before this Court, which was executed on March 14, 2024. By this Motion, Representative Plaintiff seeks, and Defendants do not oppose, preliminary Court approval of the Agreement.

# IV. SUMMARY OF SETTLEMENT TERMS

## A. The Settlement Fund

The Parties have agreed to settlement of this matter for the Maximum Settlement Amount of Fifty Thousand Dollars and No Cents ($50,000.00). Included in that amount is Collective/Class Counsel's attorneys' fees and out-of-pocket expenses, litigation costs, settlement administration fees and costs, and enhancement awards for the Representative Plaintiff—the remaining funds shall constitute the Net Settlement Amount. The Net Settlement Amount shall be further divided equally into the FLSA Settlement Fund and the State Settlement Fund. Each of the Collective/Class Members are entitled to receive their *pro rata* share of the FLSA Settlement Fund and/or the State Law Settlement Fund based on their Qualifying Work Weeks—a number unique to each Collective/Class Member calculated based on the number of weeks he or she worked during the Collective/Class Period.

## B. Individuals Included in the Proposed Settlement Classes and Settlement Deadlines

The Parties have agreed that the proposed Class includes:

Any Driver who worked for Defendants in New York, at any time from May 17, 2020 through January 2, 2024, and who does not opt out of the settlement.

*See* Exhibit A, at ¶ IV(2).

The Parties have agreed that the proposed Collective includes:

Any Driver who worked for Defendants in the United States, at any time from May 17, 2020 through January 2, 2024.

*See id.*, at ¶ IV(3).

## C. Settlement Allocation Formula

After calculating the total Net Settlement Amount (the amount remaining after deducting attorneys' fees, costs, expenses, enhancement awards, and administration fees and costs), it will be divided into the FLSA Settlement Fund and State Settlement Fund as described below. Each

Representative Plaintiff, Settlement Collective Member, and Settlement Class Member shall receive their *pro rata* share of the respective Settlement Funds according to the following process.

The Federal and State Settlement Sums are calculated as follows:

(1)     The Claims Administrator shall divide the Net Settlement Fund equally between the FLSA Settlement Fund and the State Settlement Fund.

(2)     The State and Federal Settlement Sum Variable(s) shall be determined by dividing the respective fund(s) by the total number of Qualifying Work Weeks applicable to the Settlement Collective and Settlement Class Members, respectively. The quotient for each Fund will be the respective State or Federal Settlement Sum Variable.

(3)     Each Settlement Collective/Settlement Class Member shall have the number of Qualifying Work Weeks they worked multiplied by the Federal and State Settlement Sum Variable (respectively) to determine their proportionate shares of the respective funds.

*See id.*, § VI.

## D.     Releases

In the event a Class Member does not opt-out of the settlement of the state law claims, he or she will receive his or her allocated State Settlement Sum and will release the following claims:

> any and all known or unknown claims under New York Labor Law and local wage and hour laws, including without limitation, all minimum wage and overtime violation claims of any type, liquidated damages, and any claims for any type of meal or rest break violations, inaccurate wage statements, any failure to pay wages timely during employment and at termination, unpaid vacation or sick pay or other paid time off wages of any type and related notice violations, unreimbursed business expenses, and derivative claims for unfair competition/business practices, statutory and civil penalties, interest, any claims under the theory of *quantum meruit* or breach of contract, and any other state or local law or theory related to the payment of wages or any other employment benefits against Defendant Releasees[4] that accrued during the Collective/Class Period and continuing through the date the Court grants final approval of the Class settlement, including all claims for attorneys' fees, costs, and expenses. To the extent there are any statutory protections against any type of release,

---

[4] "Defendant Releasees" means Defendants Consolidated Waste, Twin Bridges Waste and Recycling, LLC, ("Twin Bridges") and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers and Scott Earl, in his capacity as an officer, director, member, manager and/or employee of Consolidated Waste and Twin Bridges and in his individual capacity.. *See* Ex. A  IV(13).

then Settlement Class Members shall be deemed to have waived any such protection to the fullest extent permitted by applicable law.

Ex. A, § V. In the event an employee eligible to be included in the FLSA Collective returns his or her Consent Form, opting into the FLSA Settlement, he or she will release the following claims:

> any and all known or unknown claims under the FLSA (29 U.S.C. §§ 201–19) against any or all the Released Parties that accrued during their employment relating back to the fullest extent of the maximum FLSA statute of limitations and continuing through the date of the signing of their Consent Form, along with any and all claims against any or all of the Released Parties for attorneys' fees, costs, and expenses, Enhancement Payments, settlement administration, and all employee payroll withholdings/taxes associated with the Released Federal Claims.

*Id.* If an employee eligible to be included in the Collective fails to return a Consent Form, he or she will not be entitled to a recovery under the FLSA Settlement Fund and will not release his or her FLSA claims.

## E.     Enhancement Award

In return for the risk incurred and the services rendered to the Collective/Class Members, and as compensation for his general release,[5] subject to court approval, Representative Plaintiff will be paid Enhancement Awards of $2,500.00 in addition to his proportionate shares of the FLSA Settlement Fund and the State Settlement Fund. *See id.*, § IX(3.4).

## F.     Settlement Claims Administration

The Parties will retain a third-party company to serve as the Claims Administrator.  The claim administration fee will be paid out of the Maximum Settlement Amount. *See id.*

The Claims Administrator shall be responsible for the following tasks:

> (i) calculating the Federal Settlement Sums and State Settlement Sums to be offered to the Collective/Class Members; (ii) receiving the Collective/Class Members' contact information and updating their addresses to the most current available; (iii) mailing the Notice of Settlement documents required by this Agreement; (iv) receiving and logging the Consent Forms, opt out notifications, and any objections to the Class Settlement; (v) running up to one skip trace on undeliverable Notices of Settlement; (vi) reporting

---

[5] As part of the Agreement, Representative Plaintiff will execute a general release of claims as to Defendant Releasees. *See* Ex. A, § V(3).

on the status of the administration of the Settlement to the Parties and providing the Parties necessary information; (vii) conferring with Collective/Class Counsel and Defendant's counsel to resolve any issues or disputes; (viii) preparing reports and preparing a declaration regarding its due diligence in the claims administration process; (ix) providing Defendant with copies of all executed Consent Forms; (x) recalculating the Settlement Sums for the Settlement Collective and State Settlement Sums for the Settlement Class Members; (xi) setting up, administering, and making payments from the Qualified Settlement Fund ("QSF"); (xii) distributing Enhancement Award Payments to Representative Plaintiff, (xiii) distributing the FLSA Settlement Fund to Settlement Collective Members and distributing State Settlement Fund to Settlement Class Members; (xiv) making required tax reportings; and (xv) performing such additional duties as the Parties may mutually direct.

*See generally* Ex. A.

Within thirty (30) days of the Preliminary Effective Date,[6] Defendants shall provide Collective/Class Counsel the Collective/Class Members' information necessary for the Claims Administrator to (a) calculate the Collective and Class Settlement Sums for each employee eligible to be included in the Collective or Class, and (b) effectuate the Notice as provided for in the Agreement. *See id.*, § VIII(1.1).

**G.    Notice Distribution**

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). Claims Administrator shall issue the Notice of Settlement, including the Consent Form to each employee eligible to be included as a Collective or Class Member via First Class Mail and text message (where available) within fifty (50) days of the Preliminary Effective Date. *Id.*

---

[6] Preliminary Effective Date means the date on which the last of all of the following events have occurred, provided that each and every of the following events occurred: (i) counsel for Defendant is in physical receipt of a fully executed copy of the Settlement Agreement; (ii) Representative Plaintiff has filed with the Court a Motion for Preliminary Approval, seeking permission to send Notice of Settlement to the Collective Members and Class Members; and (iii) the Court has entered an order granting such Motion, and approving the Notice of Settlement to be issued to the Collective Members/Class Members (including permission to send Notice of Settlement to Collective Members and Class Members via cellular phone numbers and via text messaging). *See* Exhibit A, ¶ IV(16).

The Notice describes this Lawsuit, the material settlement terms including the scope of the release, and explains the Collective/Class Members available options as they pertain to the settlement of their federal and/or state law claims. After the Notice issues, the Collective/Class Members shall have forty-five (45) days to take action regarding their claims by returning their Consent Form and opting into the FLSA collective, opting out of the Rule 23 class, or filing an objection to the settlement.

After the close of the 45-day Notice Period, the Claims Administrator will report as to how many eligible employees opted into the Collective, and as to how many prospective Class Members opted out of the Class.[7] Those recipients who return their Consent Forms shall be Settlement Collective Members and shall receive their Federal Settlement Sum by mail within fourteen (14) days after the Final Effective Date. Those Class Members who do not opt out of the settlement shall be Settlement Class Members and shall receive their State Settlement Sum by mail within fourteen (14) days after Final Effective Date. Both the State Settlement Sum and the Federal Settlement Sum can be mailed together in one check, if applicable (and practicable). In the event a Collective/Class Member both returns their Consent Form and does not opt out of the Class, they shall be both a Settlement Collective Member and a Settlement Class Member and receive a portion from both the FLSA Settlement Fund and the State Settlement Fund.

Collective/Class Counsel shall have the ability to communicate with employees eligible to be included in the Collective or Class to (a) confirm they received their Notice of Settlement, (b) answer any questions about the Litigation, the Agreement, the Consent Form, or opting-out of the State Settlement, and (c) provide support to aid the Notice recipients to evaluate their options under the Settlement. These communications may be by phone call, text message, or email, are Court-approved communications, and shall not be considered as solicitations or a violation of any other law.

---

[7] To be considered timely, the Opt-In Consent Form must be received or postmarked on or before the close of the 45-day Notice Period. *See* Exhibit A, § VIII(1.4).

## H.    Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, the parties agree that Collective/Class Counsel will receive up to $20,000.00, in attorneys' fees and litigation expenses and costs, which together represent payment of all reasonable attorneys' fees, expenses, and costs associated with the lawsuit. Collective/Class Counsel will submit a Motion for Approval of Attorneys' Fees and Costs in conjunction with the Final Approval Motion, at a date to be set by this Court.

## V.    ARGUMENT & AUTHORITIES

"The Federal Rules of Civil Procedure require that '[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.'" *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting FED. R. CIV. P. 23(e)). The Second Circuit has determined that court approval of FLSA settlements is also required. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015).  "The factors governing court approval of settlements under Rule 23 and the FLSA are similar." *Funkhouser v. City of Portsmouth, Virginia*, No. 2:13CV520, 2015 WL 12826461, at *1 (E.D. Va. Mar. 18, 2015) (citing *Lomascolo v. Parsons Brinckerhoff. Inc.*, No. 1:08cv1319, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009)).

There are typically three stages applicable to the review of a proposed class action settlement. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined).  Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to provide the notice of certification and proposed settlement to the class members. *Id.* at

§ 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634. Here, the Parties are at the first stage.

## A.    Preliminary Class Settlement Approval Process

Rule 23 is to be liberally construed. *In re Franklin Nat. Bank Sec. Litig.*, 574 F.2d 662, 672 (2d Cir.), on reh'g, 599 F.2d 1109 (2d Cir. 1978). Liberal construction "facilitate[s] the functioning of all features of the Rule together as a unit for the purpose of affording a flexible and effective means of disposing of substantial numbers of small claims while at the same time preserving and protecting the rights of non-litigating class members." *Id.*; *see also Healthplan Services, Inc. v. Gunnells*, 542 U.S. 915 (2004). When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. FED. R. CIV. P. 23(e). Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See id.* at 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011).

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2014 WL 3900324, at *5 (D. Vt. July 9, 2014) (quoting *Menkes v. Stolt–Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010); *In re Traffic Exec. Ass'n–E. R.R.*, 627 F.2d 631, 634 (2d Cir.1980)).

While "the threshold for preliminary approval of a proposed class action settlement is meaningfully lower than the threshold for final approval," *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2012 WL 5989763, at *1 (E.D.N.Y. Oct. 24, 2012), the court must nonetheless "make 'a preliminary evaluation' as to whether the

settlement" complies with Rule 23. *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at \*5 (S.D.N.Y. Nov. 8, 2006) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)). "Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y .2009); *accord In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y.2005).

*Allen*, 2014 WL 3900324, at \*5; *see also* Fed. R. Civ. P. 23(a)–(b). The Court must be provided with the necessary information to evaluate the fairness or adequacy of a proposed settlement. *See Chang v. Philips Bryant Park LLC*, No. 17CIV8816LTSSLC, 2019 WL 8105999, at \*6 (S.D.N.Y. Oct. 23, 2019), report and recommendation adopted, No. 17-CV-8816-LTS-SLC, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). "To evaluate fairness, a court looks to both the settlement's terms as well as the process by which the parties negotiated it." *See id.* (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc.*, 396 F.3d at 116–17 (citing 4 NEWBERG § 11:41, at 87).

## B.  Rule 23's Requirements Are Satisfied by the Proposed Class Settlement

Plaintiff seeks class certification under Rule 23(b)(3). The certification requirements of Rule 23 generally apply even when certification is for settlement purposes.[8] *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Fed. R. Civ. P. 23(b)(3). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[8] The FLSA requires that the representative plaintiffs show that they are "similarly situated" to the putative collective members to obtain certification of a collective action. *See* 29 U.S.C. § 216(b). While "similarly situated" is not defined by statute, many courts have recognized that the class certification requirements of Rule 23 are more rigorous than those required by the FLSA. *See Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (recognizing that motions for conditional certification under the FLSA are not subject to the more rigorous Rule 23 certification analysis).

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974).

1.   The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a); *Chaney v. Vermont Bread Co.*, No. 2:21-CV-120, 2022 WL 3443973, at *4 (D. Vt. Aug. 17, 2022) (citing Fed. R. Civ. P. 23(a)(1); *accord Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015)). "In the Second Circuit, numerosity is typically presumed for a class of 40 or more plaintiffs." *Id.* (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)). Here, the numerosity requirement is certainly met. The proposed class encompasses approximately 100 putative Class Members. Individual joinder would be impracticable—if not impossible. *See id.*

2.   The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure, the class members must have suffered the same purported injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'") Commonality under Rule 23(a)(2) is satisfied when the

legal question linking the class members is substantially related to the resolution of the litigation. *Id.* at 350.

> Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* It is not necessary, however, that all of the questions of law or fact in a case be common to all putative class members, "[e]ven a single [common] question will do[.]" *Id.* at 359. "A showing of commonality requires the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation"—i.e., a showing that workers were not paid all promised wages when due. *See Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 71 (S.D.N.Y. 2022) (internal quotations omitted).

Here, the commonality requirement is satisfied because putative Collective/Class Members were subjected to the same alleged compensation plan wherein they were paid subject to a day rate which Plaintiff alleged caused a miscalculation of his regular rate of pay for purposes of calculating overtime. As such, the success or failure of each putative Collective/Class Member's claim turns on the same common questions pertinent to the application of Defendants' alleged policies to the Rule 23 Class—that is, whether Defendants' day rate compensation plan provided for the correct calculation of overtime compensation, and if not, whether Defendants' violations were willful, or in good faith.

3.     The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by *Wal-Mart Stores, Inc.*, 564 U.S. at 360; *see also Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279,

293 (S.D.N.Y. 2019) ("A named plaintiff's claim is typical under Rule 23(a)(3) if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." (internal quotation omitted)). "Some courts 'discuss the commonality and typicality requirements together,' but 'the commonality requirement tests the definition of the class itself, while the typicality requirement focuses on how the named plaintiff's claims compare to the claims of the other class members.'" *See Buffington*, 342 F.R.D. at 72 (internal citations omitted).

"[M]inor variations in the fact patterns underlying individual claims" do not preclude a finding of typicality "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132 (S.D.N.Y. 2014). Representative Plaintiff's claims meet this requirement, as they allege claims based on the same Consolidated Waste compensation plan wherein Plaintiff and the Collective/Class Members are paid a day rate for all hours worked that Plaintiff maintains caused a miscalculation of his regular rate of pay for purposes of overtime compensation.

Here, Plaintiff submits there are no factual distinctions between Representative Plaintiff's claims and those of other class members:[9] Defendants' day-rate compensation plan applied to all putative class members. Representative Plaintiff and the Collective/Class Members share the same legal interest in recovering their unpaid wages based on the same legal theory—that is, Defendants'

---

[9] For the purposes of this Motion and any Final Motion for Approval only, Defendants do not dispute that Rule 23 requirements are satisfied to allow approval of this Settlement Class. However, if the Agreement is not approved or if the Agreement does not become final and is not executed, then Defendants reserve the right to dispute that the Rule 23 prerequisites will have been met in any ongoing litigation.

alleged failure to compensate Representative Plaintiff and the Collective/Class Members correctly for all earned overtime compensation.

4. <u>The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation</u>

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Representative Plaintiff and the Collective/Class Members "must be more than merely speculative or hypothetical[ ]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Representative Plaintiff and the putative Collective/Class Members; and (2) Collective/Class Counsel are experienced in litigating complex hybrid class/collective actions like the one at issue. First, Representative Plaintiff contends the following: (1) Representative Plaintiff is typical of the class, so he will fairly and adequately represent the interests of the class; (2) there is no potential conflict between him and the other members of the proposed class because he is challenging pay policies that applied uniformly to all class members; and (3) Representative Plaintiff's interests do not differ from those of the class as a whole, in that they seek to benefit the proposed class by obtaining damages for all class members. Second, Collective/Class Counsel are experienced in this

type of litigation, having litigated a substantial number of collective actions and/or class actions on behalf of waste disposal drivers across the United States, and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required. *See* Declaration of Clif Alexander, attached hereto as Exhibit B.

     5.     <u>The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority</u>

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* FED. R. CIV. P. 23(b).

     i.     *Predominance Under Rule 23(b)(3)*

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed class satisfies the Rule 23(b)(3) predominance requirement because all putative Collective/Class Members share a common set of core predominate facts and legal issues, including but not limited to:

    1)    All putative Collective/Class Members worked for Consolidated Waste;

    2)    All putative Collective/Class Members were non-exempt employees;

    3)    All putative Collective/Class Members were paid a day rate;

    4)    All putative Collective/Class Members were subject to the same Employee Handbook;

    5)    All putative Collective/Class Members were subject to the same method of calculating their overtime compensation;

6) Whether Defendants improperly calculated Collective/Class Member's overtime compensation;

7) Whether Defendants violated the FLSA and New York wage and hour laws when it allegedly failed to properly calculate Collective/Class Member's earned overtime wages; and

8) Whether Defendants willfully violated federal and/or state law.

The critical factual and legal issues are the same across the class and predominate over any other tangential issues.

      ii. *Superiority Under Rule 23(b)(3)*

The superiority element of Rule 23(b)(3) requires that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery.") Rule 23(b)(3) identifies four factors relevant to the superiority inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D).

Numerous courts have held class actions are superior in wage cases because of the threat of retaliation. *See, e.g., Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of certification"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior in employment context because, inter alia, "some class members may fear reprisal"). Indeed, one court has explained that fear of employer retaliation against individuals is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001); *see also Cuthie v. Fleet Reserve Ass'n*, 743

F. Supp. 2d 486, 500 (D. Md. 2010) ("reluctance to sue one's employer may inhibit some potential claimants," therefore a "class action is well-suited to protect their rights").

Here, Representative Plaintiff contends a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime for all current and former Drivers who were paid a day rate within Collective/Class Period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the 23(b)(3)(A) factors, none of the plaintiffs before this Court have expressed a desire to prosecute their claim individually. Notwithstanding the Representative Plaintiff, approximately three (3) Opt-In Plaintiffs have already joined this action and consented to abiding by the decisions of the Representative Plaintiff. There is no reason to presume that any of the absent putative class members—none of whom have pursued overtime claims on their own—would desire to control the litigation of a separate case. It is more likely that the absent Class Members will consent to class resolution since each individual is slated to receive a settlement award in this matter.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because there are no other outstanding lawsuits against Defendants based on the claims made herein such that resolving this matter on a class wide basis only promotes judicial efficiency.

The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because Consolidated Waste maintains its corporate headquarters within this District. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Accordingly, this particular forum is the most desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, a class action is superior here because the alternative method of adjudication requires holding approximately 100 separate trials. Class resolution achieves economies of time, effort, and expense, and promote uniformity of decision.

## C.     The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation

In determining a motion for preliminary approval of a class action settlement agreement the Court reviews the proposed settlement to make a preliminary fairness evaluation. *In Re Med. X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997). "Preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements." *Id.*

At the preliminary approval stage, a court must assess "whether it is 'likely' it will be able to finally approve the settlement after notice, an objection period, and a fairness hearing." *Soler v. Fresh Direct, LLC*, No. 20 CIV. 3431 (AT), 2023 WL 2492977, at *2 (S.D.N.Y. Mar. 14, 2023) (quoting 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:10 (6th ed.) (citation omitted)). To approve a proposed class action settlement, a court must find "that it is fair, reasonable, and adequate" after considering four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *Id.* (citing FED. R. CIV. P. 23(e)(2) & advisory committee's note to 2003 amendment).[10]

---

[10] Prior to the 2018 amendments to Rule 23, district courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under the nine factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). The four new Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the "core concerns of procedure and substance." *Soler*, 2023 WL 2492977, at *2 n.3 (citing FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

1.      The Proposed Settlement is Fair

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the Parties engaged in candid discussions regarding liability and damages, an exacting review of the relevant data provided, and in-depth conversations with Representative Plaintiff regarding his experiences with Defendants.

i.      *Adequacy of Representation*

Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. *Soler*, 2023 WL 2492977, at *3. Determination of adequacy typically "entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Representative Plaintiff does not have interests that are antagonistic to or at odds with those of putative class members. *See, e.g., Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012). Representative Plaintiff's experiences were substantially the same as that of all other class members, and Representative Plaintiff has the same interest in remedying Defendants' alleged underpayment of wages. Further, Collective/Class Counsel are qualified, experienced, and able to conduct the litigation. Anderson Alexander, PLLC did substantial work identifying, investigating, litigating, and settling Representative Plaintiff's and the class members' claims, has years of experience prosecuting and settling hybrid collective/class action wage and hour litigation, and are well-versed in employment law and class action law. *See* Ex. B, at ¶¶ 4–9; *see, e.g., Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010). Therefore, the adequacy of representation factor weighs in favor of approval.

ii  *Arm's Length Negotiations*

Rule 23(e)(2)(B) requires a court to consider procedural fairness and whether "the proposal was negotiated at arm's length." *Soler*, 2023 WL 2492977, at *3. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quotation marks and citation omitted)).

This factor also weighs in favor of approval. The Parties engaged in a meaningful exchange of data as part of their settlement discussions. *Id.* ¶ 10. That data, together with the information provided by the Parties, allowed Collective/Class Counsel to negotiate the settlement from an informed position. The Parties agreed to a resolution, in principle in early 2024, and have continued to work together to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process. *Id.* ¶ 12.

iii.  *Adequacy of Relief*

Rule 23(e)(2)(C) requires a court to examine whether relief for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[11] *Soler*, 2023 WL 2492977, at *4. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

---

[11] There are no separate agreements required to be identified under Rule 23(e)(3).

First, the resolution of this matter would avoid significant costs, risks, and delay, ensuring timely relief for class members. *See* FED. R. CIV. P. 23(e)(2)(C)(i); *Grinnell*, 495 F.2d at 463 (factors include: "(1) the complexity, expense and likely duration of the litigation; . . . [and] (3) the stage of the proceedings and the amount of discovery completed"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). The parties have already engaged in a substantial and meaningful exchange of information, *see* Ex. B, at ¶ 10, are well equipped to evaluate the strengths and weaknesses of their arguments, and "had an adequate appreciation of the merits of the case before negotiating[.]" *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted). However, this case is also complex and assessing liability and damages would require significantly more factual discovery, which would prolong litigation. If litigation were to continue, Defendants would assert several fact-intensive defenses. Extensive briefing remains, including Plaintiff's contested conditional and class certification motions and Defendants' anticipated decertification motion(s). Likewise, both Parties would file dispositive motions. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time.

Further, Plaintiff would encounter real risks to establishing liability, damages, and maintaining the class action through trial. *See Grinnell*, 495 F.2d at 463 (factors include: "(4) the risks of establishing liability; (5) the risks of establishing damages; [and] (6) the risks of maintaining the class action through the trial"). Plaintiff's hybrid collective/class action involves many complex questions of law and fact, and upon a close review of the data provided by Defendants regarding the calculation of the Collective/Class Members' overtime, Collective/Class Counsel recognize that it would be difficult to prevail on their legal claims under the FLSA and New York state law.

If this case does not settle, Defendants will hotly contest liability and continue to assert their affirmative defenses. Likewise, should Defendants prevail on their affirmative defense of good faith, the Collective/Class Member's available damages would be further limited, if established at all. These uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

While Representative Plaintiff has secured a robust settlement on behalf of the Collective/Class Members, it is possible they would face a zero recovery if they proceed through trial on the merits—and the potential appeal. The real financial benefit to them now, as opposed to some uncertain future amount, supports settlement approval.

> b.      <u>The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.</u>

Second, Plaintiff's proposed method of distributing relief to the class is effective, *see* FED. R. CIV. P. 23(e)(2)(C)(ii), and would ensure "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund[.]" *In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476, 2016 WL 2731524, at \*9 (S.D.N.Y. Apr. 26, 2016). The Agreement provides monetary compensation for every class member from a gross settlement fund of $50,000. To recover for their state law class action claims, class members need take no action, and to recover their federal claims pursuant to the FLSA they must return their Consent Form, as required by 29 U.S.C. § 216(b).

The process is not onerous, and notice will be sent to the Collective/Class Members by mail and text message, where available. Because each Collective/Class Member is a current or former employee of Defendants, the Claims Administrator will have a database of addresses and contact information by which to ensure the applicable notices (and payments) reach their destination. Importantly, there will be no delay to the processing of the payment to the Settlement Collective/Class Members—indeed, the Settlement Awards will be issued within fourteen (14) days of receiving final approval of the Agreement. *See* Ex. A, § IX(2.2).

      c.     <u>The terms of any proposed award of attorney's fees, including timing of payment.</u>

Third, the proposed award of attorney's fees is not unreasonable. *See* FED. R. CIV. P. 23(e)(2)(C)(iii). Under the Agreement, Collective/Class Counsel will request Court approval for attorney's fees and litigation expenses in the amount of $20,000, or approximately 40% of the gross settlement amount. *See* Ex. A, § XI(3.2). Here, Collective/Class Counsel's requested fee amount is less than their applicable lodestar and will not weigh against preliminary approval. Nor will the timing of the payments. If the Agreement is approved, Collective/Class Counsel and the Settlement Collective/Class Member will receive payment under the Agreement on the same day—fourteen days after approval. *See* Ex. A, §§ XI(3.3, 3.4).

      iv.    <u>Equitableness of treatment of class members.</u>

The Collective/Class Members are all treated equitably under the Agreement. Each of them is set to recover a cash settlement amount based on a *pro rata* distribution. As explained above, the *pro rata* distribution is based on the number of weeks worked for Defendants during the respective time period. Thus, all Collective/Class Members are treated fairly regarding the distribution of the settlement funds.

Representative Plaintiff has established that the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This Court will be able to make a final determination as to whether the Agreement is fair, reasonable, and adequate when deciding whether to issue a final approval of the Agreement, based on a full record and after the conclusion of the Notice Period.

# VI.
## CONCLUSION

Wherefore the Representative Plaintiff requests that the Court preliminarily approve the Agreement and enter the Proposed Order provided as an attachment to this Motion.

Date:   March 15, 2024                              Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:     /s/ *Clif Alexander*
        **Clif Alexander** (admitted *pro hac vice*)
        Texas Bar No. 24064805
        clif@a2xlaw.com
        **Austin W. Anderson** (admitted *pro hac vice*)
        Texas Bar No. 24045189
        austin@a2xlaw.com
        819 N. Upper Broadway
        Corpus Christi, Texas 78401
        Telephone: (361) 452-1279
        Facsimile: (361) 452-1284

**CONWAY, DONOVAN & MANLEY, PLLC**

**Michael C. Conway**
NDNY Bar No. 302055
MConway@lawcdm.com
50 State Street, 2nd Floor,
Albany, NY
Telephone: 518-436-1661
Facsimile: 518-432-1996101

*Attorneys for Plaintiff and the Putative*
*Collective/Class Members*

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendant's Counsel of Record and Defendant is not opposed to the filing of this motion or the relief requested herein.

*/s/ Clif Alexander*
Clif Alexander


## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Vermont, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Clif Alexander*
Clif Alexander