UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | | |
|---|---|---|
| PETER DUDLEY,<br>individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CONSOLIDATED WASTE SERVICES, LLC d/b/a TWIN BRIDGES WASTE AND RECYCLING, and SCOTT EARL,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § | Civil Action No. 1:23-CV-00592-FJS-TWD<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. CIV. P. 23 |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA SETTLEMENT**

Plaintiff Peter Dudley, individually and on behalf of all others similarly situated ("Representative Plaintiff"), respectfully moves this Court to finally approve the Collective and Class Action Settlement Agreement (the "Agreement") entered into between Representative Plaintiff and Defendants Consolidated Waste Services, LLC[1], and Scott Earl (collectively, "Defendants"), to certify, for settlement purposes only, the proposed Fair Labor Standards Act ("FLSA") collective pursuant to 29 U.S.C. § 216(b) and the proposed class pursuant to Federal Rule of Civil Procedure ("Rule") 23. Defendants do not oppose the filing of this Motion.

### I.   PROCEDURAL SUMMARY

Representative Plaintiff filed a collective and class action lawsuit for unpaid overtime wages brought on behalf of himself and all other similarly situated current and former Waste Disposal

---

[1] Defendant Consolidated Waste Services, LLC was incorrectly named as Consolidated Waste Services, LLC d/b/a Twin Bridges Waste and Recycling.

Drivers of Defendants (collectively the "Parties"), who claim they were not properly compensated for all of the hours they worked. Representative Plaintiff alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties and damages under the state-law of New York. *See* ECF No. 1.

The Parties engaged in early settlement negotiations. To facilitate these discussions, Defendants provided relevant information regarding its internal policies as well as time and pay data sufficient to allow Plaintiffs' Counsel to negotiate on a representative basis. After significant negotiations, including the exchange of multiple offers and counteroffers, the Parties reached an agreement in principle. They then collaboratively endeavored to craft the hybrid class/collective for which Representative Plaintiff now seeks final approval.

On March 15, 2024, Representative Plaintiff moved this Court for an Order certifying, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). ECF No. 51. On January 15, 2025, this Court granted the motion for preliminary approval (ECF No. 51) as follows:

1. That the class settlement memorialized in the Settlement Agreement fell within the range of reasonableness and, therefore, preliminary approved its terms as it met the requirements for preliminary approval of a class action;

2. Conditionally certifying, for settlement purposes only, a Rule 23 Class consisting of "Driver who worked for Defendants in New York, at any time from May 17, 2020, through January 2, 2024, and who does not opt out of the settlement;"

3. Conditionally certifying, for settlement purposes only, a 29 U.S.C. § 216(b) Collective consisting of "Any Driver who worked for Defendants in the United States, at any time from May 17, 2020, through January 2, 2024;"

4. Finding, for settlement purposes only, that the requirements of 29 U.S.C. § 216, Federal Rule of Civil Procedure 23(a), and Federal Rule of Civil Procedure 23(6)(3) are satisfied, with the exception of the manageability requirement of Rule 23(6)(3), which the need not be addressed for purposes of settlement;

5. Appointing, for settlement purposes only, Peter Dudley as Representative Plaintiff and Anderson Alexander, PLLC as Collective/Class Counsel;

      6.     Appointing IL YM Group, Inc. as Claims Administrator;

      7.     Approving as to form and content, the Notice of Class and Collective Action Settlement Notice ("Notice") and the Consent Form;

      8.     Authorizing the timeline and dissemination of the approved Notice by mail, email, and text message to the members of the Collective/Class as provided in the Agreement and setting deadlines to respond;

      9.     Authorizing the formation of a Qualified Settlement Fund ("QSF") related to the settlement; and

      10.     Scheduling the Final Approval Hearing and setting briefing deadlines.

*See* ECF No. 51.

## II.    ISSUES PRESENTED

By this Unopposed Motion, Representative Plaintiff asks the Court to: (1) approve the Agreement as fair, reasonable, adequate, and in the best interests of the Class/Collective Members; (2) determine the Collective/Class Members received adequate notice of this settlement and the Notice and notice process comported with the Due Process Clause of the United States Constitution; (3) determine for settlement purposes only, that the requirements for class and collective certification under 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied; (4) approve the requested Enhancement Award for Representative Plaintiff; (5) approve ILYM Group, Inc.'s ("ILYM") expenses for administering the settlement, including the distribution of Notice and the settlement funds, as reasonable; and (6) dismiss this lawsuit with prejudice and enter final judgment.

## III.    SUMMARY OF SETTLEMENT ADMINISTRATION

### A.    Notice Distribution to Collective/Class Members

Upon preliminary approval, Collective/Class Counsel provided ILYM the Court's preliminary approval order, the Agreement, and the text for the Notice Packet. *See* Declaration of Cassandra Polites of ILYM, attached as Exhibit A, ¶ 4. ILYM prepared a draft of the formatted Notice Packet, which was approved by the Parties' Counsel prior to mailing. On January 17, 2025, ILYM received

the collective/class data file from Counsel for Defendants, which contained the name, social security number, last known mailing address, last known e-mail address, last known phone number, date of birth, and the number of weeks worked per state for each Collective/Class Member during the respective periods. The Class List contained 127 individuals. *Id.* at ¶ 5.

ILYM processed all 127 names and addresses contained in the Collective/Class List against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS") for purposes of updating and confirming the mailing addresses of the Collective/Class Members before mailing of the Notice Packet. *Id.* at ¶ 6. On March 6, 2025, ILYM distributed the Notice Packet to the Collective/Class Members via U.S First Class Mail, to all 127 individuals contained in the Collective/Class List. Nine (9) Notice Packets were returned as undeliverable. *Id.* at ¶ 8. After performing skip traces, ILYM located eight (8) of the nine (9) missing addresses and successfully remailed those Notice Packets. *Id.* at ¶ 9. Only one (1) Notice Packet was deemed undeliverable. *Id.* at ¶ 10.

**B.    Collective/Class Member Response to Notice**

The Collective/Class Members had a strong response to the Notice Packet. Not one Class Member elected to opt out or object to the Agreement. *See id.* at ¶¶ 11–12. There is 100% participation in the class portion of the settlement. Participation in the FLSA Collective is also strong. Of the 127 Collective Members eligible to participate, 27 (or 21.3%) returned their Consent to be a Settlement Collective Member and receive the maximum amount of damages available to them under the Agreement. *Id.* at ¶ 14. The below chart contains the relevant figures pertaining to the notice process:

| | | |
|---|---|---|
| Total Class Members | 127 | 100% |
| Total Collective Members | 127 | 100% |
| Notice Packets Successfully Mailed to Collective/Class Members | 126 | 99.20% |
| Opt-Out Requests Received | 0 | 0% |
| Objections Received | 0 | 0% |
| Consent Forms Received | 27 | 21.30% |

**C.     Settlement Distribution**

Upon Final Approval of the Agreement, ILYM will be responsible for calculating the Net Settlement Amount and distributing the Settlement Checks to the Settlement Collective/Class Members. Based on the Agreement, and subject to Court approval, the distributions from the Gross Settlement Amount are as follows:

| | |
|---|---|
| **Gross Settlement Amount** | **$50,000.00** |
| Attorneys' Fees/Costs/Expenses | -$20,000.00 |
| Enhancement Award - Peter Dudley | -$2,500.00 |
| ILYM Fees | -$7,091.00 |
| **Net Settlement Amount** | **$20,409.00** |
| *FLSA Settlement Sum* | *$10,204.50* |
| *Rule 23 Settlement Sum* | *$10,204.50* |

*See* Ex. A, ¶¶ 15–16.

The Net Settlement Amount provides for the distribution of the FLSA Settlement Fund and the State Settlement Fund according to the number of Federal/State Weeks worked by the Settlement Collective/Class Members. This ensures the fair and proportional distribution of the Net Settlement Amount to those Collective/Class Members participating in the Settlement. The Settlement Collective Members will receive an estimated average payment of $74.80, with the estimated highest gross payment being $171.71. The Settlement Class Members will receive an estimated average gross payment of $80.35, with the highest gross payment being $187.86. The 27 Settlement Class Members who also returned their Consent Form to become a Settlement Collective Member will receive both amounts.

ILYM will be responsible for mailing the Settlement Check(s) to the Settlement Class/Collective Members. *See id.* at ¶ 21. The Settlement Collective/Class Members shall have 180 days to negotiate their Settlement Checks. *See id.* Halfway through the 180-day period, ILYM will send a postcard notice to any Settlement Collective/Class Member who has not yet negotiated their check to remind them of the upcoming deadline and provide information about requesting a replacement check, should one be necessary. *Id.* Any unclaimed settlement amounts remaining after the expiration of the 180-day period will be donated to the New York Bar Foundation and/or New York Legal Aid. *Agreement* at § 2.3.

**D.     Enhancement Payment**

In return for the risk he incurred and the services he rendered to the Collective/Class Members, and as compensation for his separate general releases, subject to court approval, the Representative Plaintiff will be paid an Enhancement Payment of $2,500.00, in addition to his proportionate shares of the FLSA Settlement Fund and the State Settlement Fund. *See id.*, §§ 3.4–.5. Service payments such as these "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by the plaintiff." *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018). These payments are "particularly appropriate in the employment context." *Id.*

**F.    Attorneys' Fees**

Pursuant to Federal Rule of Civil Procedure 23(h), Collective/Class Counsel has filed a motion for an award of attorneys' fees and litigation expenses. *See* ECF No. 55. By that motion, Collective/Class Counsel has requested a Cost and Fee Award of $20,000.00 (or 40%) of the Gross Settlement Amount. This amount is inclusive of costs and expenses incurred to date.

### V.    ARGUMENT & AUTHORITIES

**A.    The Standards and Procedures for Final Approval of Class Action Settlements Under Rule 23 Have Been Satisfied.**

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e)*; Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Rule 23(e) requires approval to ensure that the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.* ("*Visa*"), 396 F.3d 96, 116 (2d Cir. 2005); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class actions. *Visa*, 396 F.3d at 116–19. Settlement eliminates the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. *See id.* Here, the settlement is both procedurally and substantively fair.

### 1. This settlement procedure is procedurally fair given the terms and negotiations.

Fairness is evaluated by examining "the settlement's terms and the negotiating process leading to settlement." *Visa*, 396 F.3d at 116. In reviewing procedural fairness, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation omitted). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d. at 116.

Here, the settlement was reached through negotiation among experienced counsel after numerous communications, both over the phone and by email. *See* Declaration of Clif Alexander, attached as Exhibit B. This litigation allowed the parties to assess the strength of their claims and defenses and reach a settlement based on well-informed arm's length negotiations. Such negotiations raise a presumption that the settlement satisfies the requirements of due process. *Visa*, 396 F.3d at 116–17 (recognizing a settlement presumptively procedurally fair where "a consensual resolution was achieved based on full information and honest negotiation between well-represented and evenly balanced parties"); *D'Amato*, 236 F.3d at 85–86 (settlement procedurally fair where it was based on arm's length negotiations by experienced counsel).

### 2. This Agreement satisfies the *Grinnell* Factors and is substantively fair.

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit set forth numerous factors a district court is to consider when assessing the substantive fairness of a class action settlement. These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of class members to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the

risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.*

The first *Grinnell* factor favors approval. If the settlement is not approved, significant additional time, effort, and expense would be incurred to resolve remaining discovery disputes, obtain conditional certification of a collective action and send notice to the putative collective members, conduct class discovery, obtain class certification pursuant to Rule 23, prepare for trial, make pre-trial submissions and motions, complete a complicated class action trial, make post-trial submissions, and pursue possible appeals. *See* Exhibit B. Risk, expense, and delay are inherent in this process. Courts have recognized that this factor favors settlement under similar circumstances. *See Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2008 WL 4185813, at *4 (S.D.N.Y. Sept. 9, 2008) ("The first *Grinnell* factor . . . supports the Settlement because, among other reasons, significant additional time, effort, and expense would be incurred to complete the trial, make post-trial submissions, and pursue likely appeals.").

The second *Grinnell* factor also supports approval as Class Members support the settlement. There is 100% participation in the Settlement Class with as no Class Members requested to opt-out. Exhibit A, ¶ 15. And no Class Member objected to the settlement. *Id.* at ¶ 16. With such strong support, this factor favors approval of the settlement. *See Visa*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Ayers*, 2008 WL 4185813, at *4 (settlement approved where one objection was filed out of 2,476 potential class members).

The third *Grinnell* factor also favors approval of the settlement. As discussed above, the parties engaged in a significant exchange of data from which Collective/Class Counsel were able to

meaningfully negotiate. Collective/Class Counsel analyzed records provided by Representative Plaintiff and spoke with him extensively about the claims at issue, and reviewed the time and pay data provided by Defendants. *See* Ex. B. Through this process, Collective/Class Counsel was able to reach a full understanding of the issues and evaluate the strength of Plaintiffs' claims and Defendants' defenses. Accordingly, this factor favors approval of the settlement.

The fourth through sixth *Grinnell* factors—the risks faced by the class in establishing liability and damages and maintaining the class action—all support approval of the settlement. In considering the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotation marks omitted). Even in actions where establishing liability appears to be a near certainty, courts recognize the inherent risks of submitting any claim to a jury. *See, e.g., McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) ("[T]here are no guarantees in life, and while it appears likely that plaintiffs would be able to establish liability at trial, things change.").

Here, Representative Plaintiffs maintain the viability of their claims, but recognize that they faced real litigation and appellate risks if this case did not settle, as these cases are not easily litigated. "Courts have recognized that wage and hour cases involve complex legal issues." *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *11 (S.D.N.Y. Apr. 16, 2012). The complexities inherent in hybrid collective/class actions, like this one, were further exacerbated by Defendants' compelling arguments that they properly paid Plaintiff and the Collective/Class Members, maintained adequate records, and provided the appropriate documentation to Plaintiff and the Collective/Class Members.

Representative Plaintiff also recognizes the risks posed by continued litigation, including the challenges associated with obtaining (and maintaining) conditional certification of a collective action

under 29 U.S.C. § 216(b) and Rule 23 certification of the state law class. Plaintiff also faces substantial risks proving liability and damages. Defendants have asserted certain defenses that would, if successful, see Plaintiff take nothing. Without resolution, there is meaningful risk that the class members would receive less than the settlement amount or nothing at all. In sum, the *Grinnell* elements of risk all existed here. *See Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) ("It is undisputed that copious risks abound with respect to maintaining this [retail misclassification] action and establishing liability[.]").

The seventh *Grinnell* factor, addressing the defendant's ability to satisfy a judgment, is not relevant here and does not suggest that the settlement is unfair. *See Torres v. Gristede's Oper. Corp.*, No. 04 Civ. 3316, 2010 WL 5507892, at *6 (S.D.N.Y. Dec. 21, 2010) ("[A] defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." (internal quotation marks omitted)) (citing authorities).

The eighth and ninth *Grinnell* factors also favor approval of the settlement. "There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Visa*, 396 F.3d at 119. Whether a specific settlement amount is "reasonable . . . is not susceptible to a mathematical equation yielding a particularized sum." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). A "settlement can be approved even when it amounts to only a small percentage of the recovery sought." *Id.* (citing authorities); *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

Here, the $50,000.00 settlement is reasonable because it is a substantial compromise of a fiercely disputed matter that will provide significant benefits to each class member who joined the federal claim or who elected not to opt-out, with payments averaging over $150.00 to Settlement Class Members, with some Class Members receiving over $350.00. While Representative Plaintiff and Settlement Collective/Class Members may have been able to obtain a larger amount at trial, the "proposed settlement provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo*, 258 F. Supp. 2d at 260. Even if a "class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery." *Id.* at 261. Importantly, any class member who believed that he or she would have been entitled to more could have opted out and pursued an independent remedy.

Additionally, the fairness of the settlement was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See Visa*, 396 F.3d at 119 (recognizing importance of district court's finding that "experienced and able counsel fought this litigation 'aggressively' and 'negotiated feverishly.'") (quotation omitted). Here, both Parties are represented by counsel experienced in litigating complex wage and hour cases under the FLSA and state wage and hour laws. *See* Ex. B. This experience was crucial in negotiating the Agreement before the Court for approval.

In sum, the *Grinnell* factors weigh in favor of final approval. Because the settlement is "fair, adequate, and reasonable, and not a product of collusion," *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval of this settlement.

B.   **The Standards and Procedures for Approval of a 29 U.S.C. § 216(b) Collective Action Settlements Under the FLSA Are Satisfied.**

The Second Circuit recognizes that a settlement of a FLSA action may be approved "only if the DOL or a district court first determines that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Cordoba v. MMLZ Corp.*, No. 21-CV-6878 (VSB), 2024 WL 460419, at *3 (S.D.N.Y. Jan. 8, 2024) (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 202 (2d Cir. 2015)). Because "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012), satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval for the FLSA settlement. *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.*

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982)). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.*

The fairness of this Agreement was addressed above and the reasoning applies equally here. *See supra* § III(A). This action involves numerous disputed issues under the FLSA including whether employees performed work off the clock for which they were not compensated.. In addition, it is uncertain whether Representative Plaintiff could maintain their collective action through trial given the dispositive motion pending at the time of mediation. In short, this settlement provides a reasonable resolution of a bona fide dispute. Final approval of the FLSA settlement is appropriate in this case.

C.   **Final Certification Is Appropriate**

The Supreme Court has confirmed the legitimacy of class certification for settlement purposes, explaining that "the 'settlement only' class has become a stock device" and that "all Federal Circuits .

. . recognize [its] utility . . . ." *Amchem*, 521 U.S. at 618. Before granting such certification, the district court must find that the proposed settlement class satisfies all the requirements of Rule 23(a) and that the action is sustainable under Rule 23(b). *Id.* at 620–21. Here, these Rule 23(a) and (b) requirements have been met for settlement purposes, as the Court already found when it granted preliminary approval. See ECF No. 82.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Thus, the parties request that the Court finally certify the Rule 23 Class as defined herein.

V.      **CONCLUSION**

For the foregoing reasons, Representative Plaintiff requests that the Court finally approve their Class and Collective Action Settlement. Representative Plaintiff has conferred with Defendants, and Defendants do not oppose this Motion.

Date:  July 10, 2025                                   Respectfully submitted,

                                                **ANDERSON ALEXANDER, PLLC**

By:     */s/ Clif Alexander*
       **Clif Alexander** (admitted *pro hac vice*)
       Texas Bar No. 24064805
       clif@a2xlaw.com
       **Austin W. Anderson** (admitted *pro hac vice*)
       Texas Bar No. 24045189
       austin@a2xlaw.com
       101 N. Shoreline Blvd., Suite 610
       Corpus Christi, Texas 78401
       Telephone: (361) 452-1279
       Facsimile: (361) 452-1284


**CONWAY, DONOVAN & MANLEY, PLLC**

**Michael C. Conway**
NDNY Bar No. 302055
MConway@lawcdm.com
50 State Street, 2nd Floor,
Albany, NY
Telephone: 518-436-1661
Facsimile: 518-432-1996101

***Attorneys for Plaintiff and the Putative Collective/Class Members***

*Plaintiff's Unopposed Motion and Memorandum in*  
*Support of Final Approval of Collective and Class Action Settlement*  
Page 15

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with Defendant's Counsel of Record and Defendant is not opposed to the filing of this motion or the relief requested herein.

                                              */s/ Clif Alexander*
                                              Clif Alexander

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of New York, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                              */s/ Clif Alexander*
                                              Clif Alexander